MARY CLARK *et al.*, as Co-Guardians of the Estate and Person of Michael Clark, a Disabled Person, Plaintiffs-Appellees and Cross-Appellants, v. OTIS ELEVATOR COMPANY, Defendant-Appellant and Cross-Appellee.

First District (4th Division)   No. 1—93—2468

Opinion filed April 20, 1995.—Rehearing denied August 15, 1995.

Menges, Mikus & Molzahn, of Chicago (Perry C. Rocco and Scott G. Reno, of counsel), for appellant.

William J. Harte, Ltd., and Herbert F. Stride, Ltd., both of Chicago (William J. Harte, Herbert F. Stride, and Joan M. Mannix, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The defendant, Otis Elevator Company, appeals from a jury verdict in favor of the plaintiff, Michael Clark, on his complaint seeking recovery for negligence. The plaintiff cross-appeals from the trial judge's order of a remittitur. We consider whether the trial judge erred when it found the plaintiff was incompetent to testify at trial because he had been adjudicated a disabled person under section 11a—3 of the Probate Act of 1975 (755 ILCS 5/11a—3 (West 1992)). For the following reasons, we reverse and remand for a new trial.

The plaintiff sought recovery against the defendant for injuries he allegedly sustained on December 4, 1986, in an elevator that the defendant maintained. On January 7, 1993, about two months before trial, on the petition of Mary Clark and Debbie Dunn, a judge in the probate division of the circuit court declared the plaintiff a disabled person based on his finding that the plaintiff was unable to make or communicate decisions regarding his person and unable to manage his finances. The order declaring the plaintiff disabled stated that it was based on the testimony of the petitioners, the report of Dr. Matthew Markos dated October 26, 1992, which indicated the plaintiff suffered an "organic mental problem," and the report of a guardian

*ad litem.* The order also stated that the plaintiff appeared in court and did not object to the guardianship. Clark and Dunn were appointed co-guardians of the plaintiff's estate and person and, shortly thereafter, they filed a fourth-amended complaint on the plaintiff's behalf against the defendant, again alleging negligence.

Before trial, the co-guardians filed a motion *in limine* in the instant action asserting that under the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)), the defendant could not present testimony of any conversation with the plaintiff or any event that occurred in the plaintiff's presence because he had been adjudicated a disabled person. Specifically, the motion sought to exclude the testimony of the defendant's expert witnesses who relied on the plaintiff's discovery deposition taken before he was adjudicated disabled which described the accident and the plaintiff's injuries, and also sought to exclude any evidence that the plaintiff was drunk when he was injured.

At the hearing on the motion *in limine*, the parties argued whether the plaintiff was competent to testify when he had been adjudicated a disabled person. The trial judge stated:

> "I can't make the determination [of whether the plaintiff is competent to testify] even if we got him on the stand. I can have some opinions about his incompetency, but I don't believe that I'm qualified without adding psychiatric or psychological testimony to make that determination. I might think he is, but I don't have the expertise to make the ultimate determination."

Subsequently, the defendant requested a hearing on the plaintiff's competency to testify. The trial judge responded:

> "I'll do that, and I'm going to do it right now. As you are aware, under the probate act you do not need testimony to declare incompetency. I will adopt the testimony given in the probate hearing, and the affidavits filed thereto, and declare him incompetent for the purpose of pendency of this action."

The judge read into the record portions of the reports which were the basis of the adjudication that the plaintiff was disabled, although the reports are not in the record on appeal. Dr. Markos found the plaintiff suffered from "an organic mental disorder, i.e., dementia secondary to alcohol" and "frequent depression disorder, i.e., major, moderate to severe." As a result, Dr. Markos concluded that the plaintiff was incapable of making personal and financial decisions and required a structured environment. The judge stated that the report of the guardian *ad litem* merely discussed the interview with the plaintiff.

The jury found for the plaintiff and against the defendant and

awarded damages of $978,600 after deducting 16% for the plaintiff's contributory fault. In response to the defendant's post-trial motion, the trial judge granted a remittitur of $16,278, reducing the verdict to $962,322. A setoff of $500,000 was applied for the plaintiff's settlement with another party. The defendant now appeals and the plaintiff cross-appeals.

OPINION

Although the plaintiff and the defendant raise several issues for review, we find it necessary to consider only whether the trial judge erred in finding that the plaintiff was incompetent to testify at trial. The defendant argues that in finding the plaintiff incompetent to testify at trial, the trial judge improperly relied on the adjudication of disability under the Probate Act.

■ Initially, the plaintiff argues that the defendant waived this issue, but a review of the transcripts reveals that the defendant objected to the trial judge's assumption that the plaintiff was incompetent to testify and requested a hearing on the issue. The defendant also raised the issue in his post-trial motion. This was sufficient to preserve the issue for review. See *Akers v. Atchison, Topeka & Santa Fe Ry. Co.* (1989), 187 Ill. App. 3d 950, 543 N.E.2d 939.

■ The Probate Act of 1975 defines a "disabled person" as a person 18 years or older who cannot fully manage his person or his estate due to mental deterioration, physical incapacity, mental illness, or developmental disability, or who spends or wastes his estate to expose himself or his family to want or suffering due to gambling, idleness, debauchery, or excessive use of intoxicants or drugs. (755 ILCS 5/11a—2 (West 1992).) The Dead-Man's Act provides that before it can be applied to evidence submitted against a disabled person, the person must be "adjudged by the court in the pending civil action to be unable to testify by reason of mental illness, mental retardation or deterioration of mentality." 735 ILCS 5/8—201(a) (West 1992).

■ ■ A witness is competent to testify if he has the ability to observe, recollect, and communicate. (*People v. Williams* (1991), 147 Ill. 2d 173, 588 N.E.2d 983.) A witness' mental deficiency is considered only to the extent that it affects credibility; therefore, sanity is not the test for competency. (*Williams*, 147 Ill. 2d 173, 588 N.E.2d 983.) A trial judge has the discretion to determine whether a witness is competent to testify and that decision may be made through a preliminary inquiry or by observing the demeanor of the witness and his ability to testify at trial. (*Williams*, 147 Ill. 2d 173, 588 N.E.2d 983.) Although there is no rigid formula to apply to determine whether a witness is competent (*People v. Garcia* (1983), 97 Ill. 2d 58, 454 N.E.2d

274), courts have held that the trial judge should consider four factors: the ability of the witness to receive correct impressions from his senses, to recollect those impressions, to understand questions, and to appreciate the moral duty to tell the truth (*People v. Puhl* (1991), 211 Ill. App. 3d 457, 570 N.E.2d 447). Every person is presumed competent to testify (see *People v. Velasco* (1991), 216 Ill. App. 3d 578, 575 N.E.2d 954), and the burden is on the party challenging competency to show the witness is incompetent (*Williams*, 147 Ill. 2d 173, 588 N.E.2d 983). The judge's decision on the competency of a witness will not be disturbed absent an abuse of discretion (*Williams*, 147 Ill. 2d 173, 588 N.E.2d 983) or misapprehension of law (*People v. Mack* (1991), 216 Ill. App. 3d 239, 576 N.E.2d 1023).

■ The mere fact that a person has been adjudicated as feebleminded does not disqualify him as a witness if he has the capacity to observe, recollect, and communicate. (*People v. Lambersky* (1951), 410 Ill. 451, 102 N.E.2d 326; see also *Burke v. Civil Service Comm'n* (1963), 26 Ill. 2d 609, 188 N.E.2d 47.) In *People v. Cox* (1967), 87 Ill. App. 2d 243, 230 N.E.2d 900, the appellate court reversed a trial court's ruling that a person was incompetent to testify because the person had been adjudicated incompetent under the Mental Health Code (Ill. Rev. Stat. 1965, ch. 91$^{1}$/$_{2}$, par. 1—1 *et seq.*). The court stated that an insane or feebleminded person may be competent to testify if he has the capacity to observe, recollect, and communicate.

■ In this case, the extent of the trial judge's inquiry into the plaintiff's competence to testify amounted to a review of the reports of Dr. Markos and the guardian *ad litem* which were submitted in support of the petition requesting the plaintiff be adjudicated a disabled person under the Probate Act of 1975. The order adjudicating the plaintiff a disabled person stated that it was also based on the testimony of Clark and Dunn. Those portions of the reports of Dr. Markos and the guardian *ad litem* which were read into the record in this case do not establish a basis for finding that the plaintiff was incompetent to testify at trial. While the plaintiff was diagnosed with an organic mental disorder and depression, there is nothing in this record to connect the plaintiff's illnesses with his competency to testify at trial. This case is similar to *Williams*, where the supreme court found that medical reports were insufficient to link a mental illness with incompetency to testify because the reports failed to provide any basis to find that the plaintiff was incapable of observing, recollecting, and communicating. The plaintiff relied exclusively on his adjudication as a disabled person in arguing that he was incompetent to testify; as the party asserting incompetency, he did not sustain his burden.

As the court held in *Cox*, the fact that the plaintiff had been adjudicated a disabled person did not require a finding that he was incompetent to testify at trial in this case. As a result of the trial judge's reliance on the plaintiff's adjudication as a disabled person, he failed to conduct a sufficient inquiry into the plaintiff's competency and, in fact, did not consider the four factors to test for incompetency. The judge stated that he "did not intend to get into the issue of competency" and that he could not make the determination of whether the plaintiff was competent to testify even if he was on the witness stand. These comments indicate that the judge believed he did not have the discretion to decide the plaintiff's competence to testify.

The plaintiff asserts that even if the trial judge improperly found that the plaintiff was incompetent to testify, the defendant suffered no prejudice as a consequence. We disagree. The plaintiff was the only witness to the accident which allegedly caused his injuries. If he was not found incompetent, he would have had to testify at trial or suffer the consequences of his absence. Although portions of the plaintiff's deposition testimony were admitted at trial as admissions, it was no substitute for allowing the jury to hear him testify in person and observe his demeanor.

Because the trial judge failed to independently consider whether the plaintiff was competent to testify, this case must be reversed and remanded for a new trial.

Reversed and remanded for new trial.

THEIS and S. O'BRIEN, JJ., concur.